IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAOUD OMAR BOONE, *et al.,*      )
      )
      Plaintiffs,      )
      )
v.      )      CASE NO. 2:01-cv-1451-F
      )      WO
CITY OF MONTGOMERY, *et al.,*      )
      )
      Defendants.      )

## MEMORANDUM OPINION AND ORDER

This lawsuit arises from an October 15, 2000 incident between eighteen-year-old Daoud Omar Boone ("Boone") and Montgomery police officers M.N. Eshenbaugh ("Eshenbaugh") and S.P. Ingram ("Ingram"). The only claims remaining in this action are those of unlawful intrusion into the Plaintiffs' home and unlawful arrest of Boone in violation of the Fourth Amendment.[1] The case is before the Court on the Defendants' Motion for Summary Judgment (Doc. #49), filed April 15, 2005, wherein Defendants argue that they are entitled to qualified immunity. Upon consideration of the Defendants' Motion, the Court concludes that it is due to be GRANTED IN PART and DENIED IN PART.

### I. JURISDICTION AND VENUE

Jurisdiction over Plaintiffs' claims is proper under 28 U.S.C. §§ 1331 (federal

---

[1] As clarified by counsel for the Plaintiff at the Oral Argument held on this motion on June 2, 2005, the unlawful arrest claim is brought only by Plaintiff Daoud Boone and the unlawful intrusion claim is brought on behalf of all three Plaintiffs. Counsel also waived the opportunity to proceed on any and all possible claims aside from unlawful intrusion and unlawful arrest.

question) and 1343 (civil rights).  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the

other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## III. FACTS

Boone resides at 3240 McElvy Street, Montgomery, Alabama, with his parents, Mary and Richard C. Boone. (Aff. D. Boone, 1; Aff. M. Boone, 1; Aff. R. Boone, 1.) Richard Boone states that he is a civil rights activist and at relevant times participated in sit-ins at the mayor's office to protest police brutality and encourage dismissal of the police chief. (Aff. R. Boone, 2.)

On October 15, 2000, Montgomery City police officers Ingram and Eshenbaugh were dispatched to 3240 McElvy Street in response to a 911 call alleging domestic violence between a brother and sister. (Aff. Eshenbaugh, 1; Ingram, 1.) The officers state that as they approached the residence, they could see that the front door was partially open. (*Id.*) Eshenbaugh knocked on the door and called out, but received no answer. (*Id.*) Because of the nature of the call, the officers then stepped into the house. (*Id.*) Eshenbaugh called out several more times. (*Id.*)

At this time, Boone was in the bedroom watching TV with his sister, Takiyah Boone,

and Takiyah's daughter.  (Aff. D. Boone, 2; Aff. T. Boone, 2).  Boone and his sister heard a noise coming from the front of the house and walked into the living room to find two police officers standing in the living room.  (*Id.*)

The testimony differs as to what happened at this point.  Boone and Takiyah Boone testify that Boone asked the officers why they were there, and they said that someone had called them about a disturbance.  (Aff. D. Boone, 2; Aff. T. Boone, 2.)  They state that they said there was nothing wrong and that Eshenbaugh became irate, shouting that they can't just call the police and then say that everything is okay.  (*Id.*)  Boone, who was standing near the door, placed his hand on the door knob and told the officers that if they did not have a warrant then they should leave.  (*Id.*)  Eshenbaugh grabbed Boone's arms and pulled them behind his back, causing excruciating pain as Boone had given blood that morning.  (*Id.*)  Boone screamed in pain, and Eshenbaugh shouted that Boone must be the one beating up girls.  (*Id.*)  Takiyah Boone asked Eshenbaugh to let go of Boone, but instead Eshenbaugh pushed Boone out the front door and towards the car.  (*Id.*)  Boone asked to be allowed to put on shoes, but Eshenbaugh refused.  Boone specifically testifies that "[a]t no time did I do anything or make any gesture that placed the defendants in harms way or to provoke them." (Second Aff. D. Boone, 1.)

The officers state that Boone was yelling and cussing at them from the moment he appeared in the living room, demanding to know why they were in the house and demanding that they leave.  (Aff.  Eshenbaugh, 2; Aff. Ingram, 2.)  Ingram told Boone that they were

there in response to a 911 call and both officers asked Boone to calm down and tell them what was going on.  (*Id.*)  They state that Boone was using threatening words and gestures, with his arms balled up in a fighting position.  (*Id.*)  Boone then started shoving Eshenbaugh as though trying to push him out the door.  (*Id.*)  The officers tried to restrain Boone to place him in custody, and Boone began fighting them and kicked Eshenbaugh in the shin three times.  (*Id.*)  The officers subdued Boone, who was still cussing and yelling.  (*Id.*)  Takiyah Boone was yelling and cussing from behind him in the hallway, and she also yelled for them to let him go because he had gotten a shot in his arm.  (*Id.*)

The officers placed Boone in the back of the police car about the time Mary and Richard Boone pulled up to the house.  The officers spoke to them, and they followed the officers first to the Airbase, because the officers believed Boone to be a juvenile offender, and then to the city jail after they realized that Boone was eighteen.  Eshenbaugh arrested Boone for harassment.

Again, the testimony differs as to what occurred next.  Eshenbaugh states that he took a statement from Boone, who told Eshenbaugh that he had gotten in a fight with his older sister Anna Makeba Boone over a book bag.  (Aff. Eshenbaugh, 3.)  Boone had a small cut over his right eye and fingernail scratches on his forearm.  (*Id.*)  Eshenbaugh determined that Anna Makeba Boone had been the primary aggressor in the incident, and Officer Ingram signed a warrant for her arrest.  (*Id.*)  However, in his affidavit, Boone states, "I know of no incident that occurred on October 15, 2000, which would cause a person to call the police to

5

my house." (Second Aff. D. Boone, 1.) Boone was tried and convicted of harassment in the Montgomery Municipal Court, but was acquitted on appeal to the Circuit Court of Montgomery County.

## IV. DISCUSSION

Plaintiffs claim two violations of their Fourth Amendment rights pursuant to 42 U.S.C. § 1983[2]: unlawful intrusion into their home and unlawful arrest of Boone. Defendants argue that they are entitled to summary judgment on both claims because of qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *See, e.g., Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).[3] "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation and citation omitted). When determining whether defendants are entitled to qualified immunity, the Court must first ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Brosseau v. Haugen*, 543 U.S. ___, *4 (2004)

---

[2]Section 1983 provides a remedy when person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. 42 U.S.C. § 1983. In this case, it is undisputed that at all relevant times Eshenbaugh and Ingram were acting under the color of state law.

[3]The parties agree that at all relevant times Eshenbaugh and Ingram were engaged in discretionary functions.

(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If a constitutional violation is found, the Court must then determine whether this violation was of a right that was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.  The Court will address the Plaintiffs' claims in turn.

   *1.  Unlawful Intrusion Claim*

   The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.  "At the very core [of this amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. U.S.*, 365 U.S. 505, 511 (1961).  Therefore, "[i]t is accepted, at least as a matter of principle, that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971).

   In the exigent circumstance of an emergency, courts have recognized that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978).  Clearly, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Id*. (quotation and citation omitted).

   The Eleventh Circuit has established that for the emergency exception to apply, the government must show both exigency and probable cause that someone was in danger. *United States v. Holloway*, 290 F.3d 1331, 1340 (11th Cir. 2002).  However, "[t]he fact that no victims are found,

7

or that the information ultimately proves to be false or inaccurate, does not render the police action any less lawful." *Id.* at 1340.  In *Holloway*, the Court upheld a warrantless entry and search in response to an anonymous 911 call, concluding that "[a]s long as the officers reasonably believe an emergency situation necessitates their warrantless search, whether through information provided by a 911 call or otherwise, such actions must be upheld as constitutional." *Id.* at 1331.  There, the Court relied on two 911 calls reporting gunshots and arguing, the officers' prompt arrival at the premises, and the fact that the scene corroborated the 911 allegations in concluding that the officers reasonably believed that an emergency situation justified a warrantless search for potential gunshot victims.[4]

Multiple courts have recognized that "[t]he volatility of situations involving domestic violence make them particularly well-suited for an application of the emergency doctrine." *United States v. Martinez*, 406 F.3d 1160, 1164-65 (9th Cir. 2005); *see also Fletcher v. Clinton*, 196 F.3d 41, 50 (1st Cir. 1999) (in domestic violence situations "violence may be lurking and explode with little warning"); *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) ("Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified . . . .").  The Montgomery Police Department has recognized domestic violence as an issue of "major importance" and has acknowledged that domestic violence is "one of the most singular causations" of homicide.  (Domestic Abuse/Family Violence Policy, 1.) Additionally, "more officers are killed or injured on domestic violence calls than on any other type

---

[4]A limited number of cases seem to suggest that 911 calls alone justify warrantless entries.  *See, e.g. United States v. Richardson*, 208 F.3d 626 (7th Cir. 2000) (call alleging rape and murder); *United States v. Cunningham*, 133 F.3d 1070 (8th Cir. 1998) (call alleging occupant held against her will).

of call." *Hearings before Senate Judiciary Committee,* 1994 WL 530624 (F.D.C.H.)(Sept. 13, 1994)(statement on behalf of National Task Force on Domestic Violence).

The Court finds that the officers' entry is this case falls within the emergency exception to the Fourth Amendment prohibition against warrantless entry.   The officers were specifically responding to a 911 call placed from the residence.  (Incident Report, 1).  Both officers stated that they were told that it was a domestic violence call.   (Aff. Eshenbaugh, 1; Aff. Ingram, 1.) Eshenbaugh stated that when he arrived at the residence he saw the front door was standing open, and he knocked and called out repeatedly and got no response.  (Aff. Eshenbaugh, 1).  He stated that "[b]ased on the fact that the call was regarding a fight between a brother and a sister, and the fact that no one was answering us, we had no idea what was going on in that house." (*Id.*)  Ingram stated that he explained to Richard Boone that they had been called because of a reported fight, had received no response and had entered because "it was our responsibility to check on the welfare of whoever was inside." (Aff. Ingram, 3).  The combination of the 911 call alleging domestic violence, finding the front door of the home standing open, and receiving no response to repeated knocks and calls is sufficient for a reasonable officer to have probable cause to believe that someone inside the residence was in danger and that the situation was time sensitive such that it was inappropriate to attempt to obtain a warrant before entering.  Therefore, the Court finds that the Plaintiff's Fourth Amendment rights were not violated by the officers' warrantless entry.

Plaintiffs also contend that the officers violated their Fourth Amendment rights by remaining in the house after Boone and his sister appeared in the hall and stated that nothing was wrong. However, courts have acknowledged that in domestic violence situations officers may reasonably remain to ask questions.  *See, e.g., United States v. Brooks*, 367 F.3d 1128, 1137 (9th Cir. 2004).

The court in *Brooks* explained that in domestic violence situations victims commonly deny that anything has occurred, and found the officer's decision to stay and ask additional questions after he had identified the victim and she had assured him that she was unharmed was "reasonable police procedure." *Id.* In this case, to the extent that Daoud Boone was the victim, the officers were clearly justified in their decision to ask additional questions even though he told them nothing was wrong. However, at the time of the questioning, the officers had yet to establish the identity of the victim. Therefore, they were certainly justified in asking questions of someone who could have reasonably been the perpetrator in spite of his testimony that nothing was wrong. The decision of the officers to remain for a reasonable period of time and ask question related to the incident were as necessary to determining whether persons in the home were in danger as was entering the home initially. Thus, this decision also falls within the emergency exception and did not violate the Plaintiffs' Fourth Amendment rights. Therefore, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the claim of unlawful intrusion.

### 2. Unlawful Arrest Claim

As well as prohibiting unlawful intrusion, the Fourth Amendment establishes the constitutional right of individuals not to be arrested without probable cause. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). Probable cause exists "if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* The existence of probable cause is judged by objective standards. *Id.*

The facts of this case, when taken in the light most favorable to the Plaintiffs, indicate a

genuine question of material fact as to whether the officers had probable cause to arrest Daoud

Boone.  Boone was arrested for harassment in violation of Alabama Code § 13A-11-8(a), as adopted

by Montgomery Municipal Code §§ 1-9.  (Warrant of Arrest, 1.)  Alabama Code § 13A-11-8(a)

provides as follows:

> A person commits the crime of harassment if, with intent to harass,
> annoy, or alarm another person, he or she either:
> (1) a. Strikes, shoves, kicks, or otherwise touches a person or subjects
> him or her to physical contact [or]
> b. Directs abusive or obscene language or makes an obscene
>  gesture towards another person.
> (2) For purposes of this section, harassment shall include a
>  threat, verbal or nonverbal, made with the intent to carry out
>  the threat, that would cause a reasonable person who is the
>  target of the threat to fear for his or her safety.

Boone stated in his affidavit that he heard someone come in, went to the front door to find two

officers standing in the living room, and asked them why they were there.  (Aff. D. Boone, 2.)  The

officers said they were responding to a call about a disturbance, and Boone stated that nothing was

wrong.  (*Id.*)  The officers then became irate and shouted, and Boone placed his hand on the door

knob and told them that if they did not have a warrant then they needed to leave.  (*Id.*).  Boone then

had his hands placed behind his back and was taken to the patrol car.  (*Id.*)  Takiyah Boone's

affidavit recounts the same story, adding only that Boone screamed out in pain when his hands were

handcuffed.  (Aff. T. Boone, 2).  In his second affidavit, Boone specifically stated that "At no time

did I do anything or make any gesture that placed the defendants in harms way or to provoke them."

(Second Aff. D. Boone, 1.)  Under the Plaintiff's version of the facts, a reasonable officer would not

have had probable cause to believe that Daoud Boone had committed, was committing or was about

to commit harassment.  Therefore, the Court finds that the facts, when taken in the light most

favorable to the party alleging injury, show that the officers violated the Plaintiff's constitutional rights.  Thus, the Court must now determine whether the officers are protected by the defense of qualified immunity.

Courts determined well prior to Boone's arrest that "it [i]s clearly established that a person has the right not to be arrested unless probable cause justifies the arrest."  *Beech v. City of Mobile*, 874 F.Supp. 1305, 1311 (S.D. Ala. 1994) (quoting  *Motes v. Myers,* 810 F.2d 1055, 1059 (11th Cir.1987)) (finding that arguable cause did not exist to arrest a man who balled up his fist and with profanity told an undercover police officer to leave him alone when he was not motivated by an intent to harass, annoy, or alarm).  However, to be entitled to qualified immunity in an unlawful arrest context, "an officer need not have actual probable cause but only 'arguable probable cause.'" *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003) (citation omitted).  Therefore, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.* (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).  "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quotation omitted).

In this case, however, the facts when viewed in the light most favorable to the Plaintiff reveal nothing that would give rise to even arguable probable cause that Boone committed, was committing, or was about to commit harassment.  As stated above, harassment requires physical contact, abusive language, or obscene gestures, including verbal or nonverbal threats.  *See* Ala.Code § 13A-11-8(a). Boone and his sister testify that Boone was not physically or verbally harassing, using gestures, or making threats.  Boone's language was limited to asking why the officers where in his home, stating

that nothing was wrong, telling the officers that if they did not have a warrant they needed to leave, and screaming in pain when he was handcuffed.  (Aff. D. Boone, 2; Aff. T. Boone, 2.)  And, as stated above, Boone specific states that "At no time did I do anything or make any gesture that placed the defendants in harms way or to provoke them." (Second Aff. D. Boone, 1.)  Additionally, the facts when taken in the light most favorable to the Plaintiff do not provide evidence that any conduct or language of Boone's was motivated by a desire to harass, annoy or alarm, as opposed to a desire to gain information or encourage the officers to leave the residence.  Because the facts viewed in the light most favorable to the Plaintiff do not establish even arguable probable cause, the Defendants are not entitled to the protection of qualified immunity on the Plaintiff's claim of unlawful arrest. Therefore, the Defendants' Motion for Summary Judgment is due to be DENIED as to the unlawful arrest claim.

## CONCLUSION

For the foregoing reasons,  Defendants' Motion for Summary Judgment (Doc. #49) is GRANTED as to the unlawful intrusion claim brought by Richard, Mary and Daoud Boone, and DENIED as to the unlawful arrest claim brought by Plaintiff Daoud Boone alone.  The unlawful arrest claim will be set for trial by separate Order of the Court.

DONE this 9th day of June, 2005.


            /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

13